MILLER v. WOLF ET AL.

1. **Appeal to Supreme Court**: CERTIFYING EVIDENCE: "SUBMITTED"
EQUIVALENT TO "OFFERED." On the appeal of an equitable cause, where
a trial *de novo* is sought, a certificate of the trial judge which states
that "the cause was submitted upon the following testimony, being all
the evidence *submitted* in the cause," *held* sufficient—the word "submitted," when so used being equivalent to *offered*.

2. **Practice in Supreme Court**: LANGUAGE OF ABSTRACT: "TESTIMONY" FOR "EVIDENCE." If it can fairly be inferred, however informal the
language used, that the appellant claims that he has presented an abstract
of all the evidence, this court will presume that he has, unless the appellee
sets out additional evidence; and in this case the appellant is regarded
as making such claim, though he uses the term "testimony," somewhat
inaccurately, instead of *evidence*.

3. **Judgment**: EVIDENCE OF: WHAT IS. The only legal evidence of a judgment is the clerk's entry in the record provided by law, and the abstract
of the same in the judgment docket. The judge's entries in his calendar are not competent to prove the rendition of a judgment.

4. **Lien upon Real Estate**: NOT CREATED BY VERDICT WITHOUT JUDGMENT. A mere creditor has no interest, legal or equitable, in his debtor's real estate, and a verdict, without judgment thereon, gives him no
interest of which a purchaser is bound to take notice.

5. ———: NUNC PRO TUNC JUDGMENT: DOES NOT RELATE BACK OF ACTUAL
RENDITION. A *nunc pro tunc* judgment does not create a lien upon the
debtor's land sold prior to the date of its actual rendition, even though
the verdict on which it is rendered may have been returned and recorded
prior to the sale.

*Appeal from Appanoose District Court.*

THURSDAY, APRIL 10.

ACTION in equity to quiet title to one hundred and twenty

acres of land. The land was at one time owned by one Peter Miller, and both the plaintiff and the defendants claim under him. The plaintiff claims under him by deed executed September 20, 1877. The defendants claim by an execution sale, made in October, 1880, upon a judgment against Peter Miller, the appellant's grantor, and in favor of one Daniels. The defendants base the superiority of their title upon the alleged fact that the conveyance from Peter Miller to the plaintiff was made to defraud creditors, and upon the further alleged fact that the indebtedness for which the execution sale was made was a lien upon the land prior to the conveyance. This action was brought immediately after the execution sale. Daniels, the purchaser at the sale, was made defendant. He afterwards died. His administrator and his heirs, the present defendants, were substituted. The disposition of the case being delayed, the plaintiff, out of caution, paid to the clerk of the court the amount necessary to redeem, insisting, however, as a matter of law, that his title should be quieted regardless of the redemption, and that the court should so decree. The court held that the interest acquired under the execution sale was paramount to the plaintiff's title; that the money, however, paid by him to the clerk, operated to effect a redemption; and it directed the clerk to pay the money to the administrator of Daniels, and rendered judgment in favor of defendants. The plaintiff appeals.

*Geo. D. Porter*, for appellant.

*Tannehill & Fee*, for appellees.

ADAMS, J.—This case comes to us for trial *de novo*, if at all. The defendants insist that it cannot be so tried. They contend, *First*, that the evidence is not properly certified, and, *Second*, that the abstract does not purport to be an abstract of all the evidence.

The objection to the certificate is that it does not purport to certify to all the evidence offered. It states that the cause

Miller v. Wolf et al.

**1. APPEAL to supreme court : certifying evidence : "submitted" equivalent to "offered."** was submitted upon the following testimony, "being all the evidence submitted in said cause." Then follows a statement of the evidence. All the evidence *offered*, as well as that introduced, should be certified. Code, section 2742; *Taylor & Co. v. Kier*, 54 Iowa, 645. The certificate does not follow the language of the statute, but it must be sustained, if it complies with it in substance. The question before us must be determined upon the word "submitted," as used in the certificate. If that word is broad enough to include evidence offered, but not introduced, then the certificate is sufficient; otherwise it is not. The word *submit*, as applied to a cause, is in common use. Parties submit a cause when they refer it to the court or referee for disposition. The word, we think, is sometimes used as applied to evidence, though not, perhaps, with the same accuracy. Where in an equity case evidence is brought forward and placed at the disposal of the court, to be admitted or excluded, it is in some sense submitted, and such evidence is certainly offered. In our opinion the certificate is sufficient.

The next question is as to whether the abstract purports to be an abstract of all the evidence. The statement relied upon by the appellant is in these words: "It (the **2. PRACTICE in supreme court : language of abstract: "testimony" for "evidence."** cause) was submitted as per agreement upon the following testimony, being all the testimony introduced in said cause." This statement is slightly inaccurate, because the evidence embraced documents as well as testimony. But it appears to us that the abstractor used the word "testimony" as synonymous with evidence.

The abstract should present to us all the evidence which we need to examine, and, if the case is to be tried *de novo*, the appellant should make a statement which is sufficient to show that he claims that he has presented an abstract of all the evidence. We do not examine the statement quite as critically as we do the certificate of the judge, by which the

evidence is made of record, if at all. The appellant's statement is sufficient, if the opposite party and the court are fairly apprised that the appellant claims that he has presented an abstract of all the evidence. The statement may not be strictly true; but that is not the material point. If we can fairly infer, however informal the language, that the appellant claims that he had presented an abstract of all the evidence, we will assume that he has, unless the appellee sets out additional evidence, which he may always do, if he thinks that he needs it. Construing the statement, then, with such liberality as we think that we should, in view of the purpose which it was designed to serve, we have to say that we think that the appellant's statement in the case at bar is sufficient to justify us in holding that the case is triable *de novo*.

We come, next, to the question as to whether the conveyance from Peter Miller to the plaintiff was fraudulent; and we have to say that we think it was not. So far as the impeachment of the plaintiff's good faith is concerned, the defendants rely wholly upon what they deem unnatural circumstances. But they are not in our opinion sufficient. We have all reached this conclusion upon a separate reading of the evidence, and, while it is not very voluminous, we must be allowed to state our conclusion without setting the evidence out.

The point upon which the defendants rely, apparently with most confidence, is the alleged lien which, it is said, existed in favor of Daniels, the execution creditor, prior to the plaintiff's purchase. They claim that the judgment upon which the execution issued was rendered prior to the plaintiff's purchase. The judgment in question was for certain costs; and the difficulty, if there is any, in determining when the judgment was rendered, grows out of an irregularity. The defendants claim that the judgment was rendered on the 25th day of August, 1877—nearly a month before the plaintiff's purchase. He claims that it was not rendered until the following January. The facts appear to be substantially as fol-

lows: The costs for which the judgment was rendered accrued upon the trial of an appeal from an assessment of damages allowed in a proceeding for the establishment of a highway. The petitioner for the highway was Peter Miller. The claimant of damages was Daniels. The amount of damages allowed by the board of supervisors was eighty-five dollars. The claimant appealed. The costs which accrued upon the trial were $248.10. Where the claimant appeals, the petitioner or county must pay the costs, but the county shall pay only when the damages have been ordered to be paid out of the county treasury. It seems to be conceded that the damages were not ordered to be paid out of the county treasury. Daniels, therefore, was entitled to a judgment against the petitioner for costs. Upon the coming in of the verdict, the court made in its calendar, or court docket, an entry in these words: "Order on verdict as provided by law." The court at that term made no entry of a judgment for costs, but simply made an entry of an order respecting the damages. The clerk's entry is in these words: "And now, on this 11th day of the term of the court, it being the 25th day of August, 1877, the court orders that the above named amount of $216.44 be certified to the clerk of the board of supervisors, who shall therefore proceed as if such amount had been by them allowed the claimant as damages." This was the condition of the record at the time the plaintiff bought and took his conveyance. The defendants insist that it is sufficient to show that Daniels had a judgment lien for his costs at that time. There is no pretense that the judgment existed by reason of the clerk's entry. That makes no reference to costs, and does not purport to be an entry of a judgment for anything. It was simply an order of certification of the damages. What the defendants rely upon, as being a judgment for costs, is the judge's calendar entry, to-wit, the words, "Order on the verdict as provided by law." This the clerk understood, and we think correctly, to direct simply the entry of an order of cer-

<span style="font-size:smaller">3. JUDGMENT:<br>evidence of:<br>what is.</span>

.tification of damages, as provided in section 962 of the Code. But, if we should construe it as directing an entry of a judgment for costs, it would still be insufficient to constitute the judgment itself, or become the legal evidence of it. The judge's calendar is no part of the court record provided by law. It is essentially in the nature of a private memorandum of the conclusion reached. It is true, it is designed in part as a communication to the clerk, but it has no more legal force as such than an oral communication would have. The only legal evidence of a judgment is the clerk's entry in the record provided by law, and the abstract of the same in the judgment docket. *Case v. Plato*, 54 Iowa, 64; *Towle & Roper v. Leacox*, 59 Id., 42; *Moore v. McKinley*, 60 Id., 367. The evidence, then, above set out, as showing a judgment rendered on the 25th day of August, 1877, was wholly incompetent, and we cannot find from it that a judgment was rendered upon that day.

The defendants insist, however, that, even if this is so, Daniels had acquired an equitable interest in the land, by

4. LIEN upon real estate: not created by verdict without judgment.

reason of the fact that a verdict had been rendered which entitled him to a judgment for costs, and that the same force should be given to that equitable interest which should be given to an actual judgment lien, provided the plaintiff had notice of the verdict; and the defendants contend that he had. Their position in regard to notice is based upon the fact that the plaintiff claims under a quit-claim, and that such a deed only carries the interest of the grantor, which is subject to outstanding equities. They rely upon *Watson v. Phelps*, 40 Iowa, 482; *Besore v. Dosh*, 43, Id., 211; *Springer v. Bartle*, 46 Id., 688; *Winkler v. Miller*, 54 Id., 476; *May v. Le Claire*, 11 Wal., 217.

That a person holding under a quit-claim deed takes subject to such equities as might have been asserted against his grantor, is not to be denied. But a creditor, merely as such, has no interest, legal or equitable, in his debtor's real estate.

Nor did the fact that Daniels had a verdict give him any interest in advance of the rendition of a judgment. The most that can be said is that, if Peter Miller had died insolvent, and the plaintiff had bought with actual knowledge of the verdict and of the insolvency, such facts might have been shown as a circumstance, in connection with others, tending to impeach the good faith of the purchase. But no such question arises, because there is no evidence of such facts, and because we have already found that the plaintiff was a *bona fide* purchaser.

One question remains to be determined. The defendants contend, in subtance, that, even though Daniels had no equitable interest in the land of which the plaintiff was bound to take notice at the time he purchased, and even though the record disclosed no judgment lien at that time, still he became affected by what was afterwards done. They contend that the court rendered a *nunc pro tunc* judgment, which bound the land from a time anterior to the plaintiff's purchase.

5. ——: nunc pro tunc judgment does not relate back of actual rendition.

We do not think that the evidence shows the rendition of a *nunc pro tunc* judgment. We do not care to set out what is relied upon, because we do not think that it is competent for a court to bind by a lien the land of a third person, by the rendition of a *nunc pro tunc* judgment against his grantor. A purchaser of real estate takes it charged with the lien of only such judgments as are actually existing at the time he purchases.

We think that the plaintiff did not need to redeem to protect his rights, and that the court erred in directing the clerk to pay the money in his hands to the defendant administrator, and in rendering judgment in favor of the defendants for costs.

REVERSED.