Spear, C. J.
The question argued by counsel for plaintiff in error, as arising upon the record, is, whether or not, in an action commenced prior to the beginning of the term, upon a claim for money, a judgment announced though not placed upon the journal during the term but entered nunc pro tuno after the term, creates a lien upon, the real estate of the judgment debtor, as against a bona fide purchaser who buys during the term but before the judgment is announced, without knowledge of the pendency of the action.
*262 The question thus made involves a consideration of the statute which deal with the essentials of a judgment and with its effect upon the real property of the judgment debtor. Section 5374, Revised Statutes, provides that lands and tenements, and goods and chattels not exempt, “shall be subject to the payment of debts and shall be liable to be taken on execution and sold. ’ ’ Section 5375 provides that: “Such lands and tenements, within the county where the judgment is entered, shall be bound for the satisfaction thereof from the first day of the term at which judgment is rendered ; but judgments by confession and judgments rendered at the same term at which the action is commenced, shall bind such lands only from the day on which such judgments are rendered.” It has sometimes been contended, and the rationale of the judgments of the courts below in this case appears to imply, that the actual entry of the judgment upon the journal is not essential to the creation of a lien. This implication, it seems to us, is not warranted, when all the sections bearing upon the subject are regarded and their evident purpose considered. It is true that the two words “rendered” and “entered,” in their strict use, bear a clear difference in meaning and intent. Giving to these words such signification, a judgment may be ‘said to be “rendered” by a declaration from the bench; but to enter it requires the act of the clerk in writing it upon the journal. It is true, also, that for some purposes a judgment may be regarded as rendered so soon as it is pronounced. But, having in mind that we are dealing with the creation of liens upon real estate, the question is in what sense is the word “rendered” used in the statute? Section 5331 provides that: “All judg *263 ments * * * shall be entered on the journals of the court. ’ ’ Why this requirement if the judgment is to be regarded as in full force and effect for all purposes by the mere announcement of it from the bench ? It would not be questioned, we suppose, that execution may not properly issue on a, judgment until it has been duly entered. From this it would follow that goods and chattels even cannot be seized in execution upon the mere announcement of judgment by the court, and to assume that lands and tenements may be burdened by a lien, good for every purpose except sale, by judicial acts of less formality than are necessary to subject goods and chattels to the payment of the debt, would be an anomaly in the law in view of the fact that when execution issues it must be first satisfied by levy and sale of goods and chattels, if any are found not exempt, and the money can be made out of lands and tenements only for want ■of goods and chattels. The requirement that all judgments must be entered on the journal carries the implication that until that is done the judgment is inchoate only; it is incomplete. Though possessing the character of potentiality it lacks the character of actuality, and hence is without probative force. Recurring again to section 5375, ■defining what lands may be bound and when, we find the expression “within the county where the judgment is entered. ’ ’ Entered when ? The words used are in the present tense. It is as to what must be done then — with the action which must be had at the term in order to effect a lien that the .section is dealing. What more natural inference than that the phrase quoted means entered at the term? Giving, then, to section 5331 proper effect, and to the phrase respecting the entry of judg *264 ment, in section 5375, its proper signification, and its employment in the statute its proper purpose, we conclude that that section requires that both conditions be satisfied, and that in order to an effective judgment, one on which execution may issue as contemplated by section 5374, and which will create a lien upon real estate, as contemplated by section 5375, it must be entered on the journal as well as pronounced by the court; in other words, that the judgment isn’t “rendered,” within the meaning of the last cited section until it is entered on the journal.
This conclusion is strengthened by a consideration of the purpose of our recording acts. These acts rest upon a recognition of the policy that there should somewhere be found a record which will disclose the state of the title of all lands within the county. For conveyances, mortgages, leases, etc., resort is had to the office of the county recorder; for tax liens to the tax duplicates ; for judgment liens to the records of the courts. The entry of the judgment of the court of common pleas, in connection with the docket entries, constitutes, prior to the making up of the final record, a record which shall be notice to the world of the lien of the judgment upon the debtor’s lands, and when so entered all men must take notice of the lien at their peril. The business public, therefore, has a high interest in the maintenance of such a system as will enable every person, by the ordinary inquiry, that is an examination of the records, to ascertain the condition of titles. The statute in review was enacted for the benefit of the judgment creditor, but it is only reasonable to hold that the obligation rests on him, if he claims the advantage it gives, to comply strictly with its terms in order that due notice of *265 such claim be given to the world, and that innocent persons shall not suffer. He controls the proceedings ; he can take advantage of the statute or not at his pleasure. If he does comply he has given the notice and effected the lien; if for any cause he falls short, the consequences should be upon him. In the present case, one tracing the title would have found it in Hendrickson. He would have then found only an action for money pending against the owner, but no judgment entered at the adjournment of the term. The abstractor would then have been justified in concluding that the land was not affected by the pending action. Upon every consideration of justice, and in order to make section 5375 consistent with other laws on the subject of liens upon real estate, we are required to give such construction to the section as will require that in order to effect a lien upon lands as of the first day of the term, as contemplated by section 5375, the entry of judgment as well as the announcement thereof, must be made during the term.
If we are to treat this entry of judgment as one ordered nunc pro tunc, the law applicable to the case would seem to involve little difficulty. It is entirely settled law that an entry of judgment nunc pro tunc will not be ordered where it will prejudice intervening rights of innocent persons. As expressed by Professor Black in his work on Judgments, section 137: “When a judgment is entered nunc pro tunc, its effect, so far as it operates by relation back to the earlier date, must be confined to the rights and interests of the original parties ; at least it will not be allowed to work detriment to the rights of innocent third persons acquiring interests without notice of the rendition of any *266 judgment. Thus a purchaser of real estate takes it charged with the lien of only such judgments as are actually existing at the time of the purchase, and it is not competent for a court to bind by a lien 1 the lands of a third person by the rendition of a nunc pro tunc judgment against his grantor.” And as held in Miller v. Wolf, 63 Iowa, 233: “A purchaser of real estate takes it charged with the lien of only such judgments as are actually existing at the time he purchases.” See, also, Borer v. Chapman, 119 U. S., 587; Smith v. Hood & Co., 25 Pa. State, 218; Newburgh Bank v. Seymour, 14 John., 219; Galpin v. Fishburne, 3 McCord, 22; Mc Clannahan v. Smith, 76 Mo., 428;Koch v. R'd Co., 77 Mo., 354; Ninde v. Clark, 62 Mich., 124; Graham v. Lynn, 4 B. Monroe, 17; Acklen, Adm'r v. Aciden, 45 Ala., 609; Hays v. Miller, 1 Wash. Terr., 143’; Shirley v. Phillips, 17 111., 471; Church v. English, 81 111., 442; Wells v. Gieseke, 27 Minn., 478. It would seem to follow necessarily that where the innocent purchaser has had no notice of the application for the order nunc pro tunc, the judgment so ordered entered should not be held to preclude him.
It is important, however, to a clear understanding of the case, to note that the averment in the answer is not, in words at least, that the judgment was entered nunc pro tunc. The averment in that respect is that at no time during the January term was there spread upon the journals any judgment or finding in respect to theicase, nor was any entry then filed in said court, but that on the fourth day of April (four days after final adjournment of the term), a journal entry was prepared by counsel for plaintiff setting forth a finding and judgment in the suit, and then placed upon the journal as of the twenty-ninth of March preceding, which was *267 during the term. It thus appears that the action of the clerk in putting the entry on the journal was by procurement of plaintiff’s counsel rather than by order of the court. It is to be concluded, also, we suppose, that, upon its face, the judgment appears to have been rendered and entered on the twenty-ninth day of March, a day within the term; and if this is conclusive, and cannot be contradicted by proof of the alleged facts, then it binds the lands from the first day of the term by virtue of section 5375, and the demurrer to the answer was well taken and the judgments below are right.
. This brings us to a question not argued by counsel, viz : can Irvin T. Coe, plaintiff in error, be heard to question the conclusiveness of this judgment as it appears upon its face?
The subject of when a judgment is open to collateral attack is a vexed one. Upon the one side are found weighty considerations affecting the public convenience and welfare, especially in regard to the maintenance of the integrity of land titles ; on the other the strong desire of courts to avoid results which work out positive injustice to individuals. Thus has arisen a conflict between principles of policy, and principles of natural justice, and, as might be expected in cases of such conflict, the decisions of courts have differed. Indeed the differences have been so frequent and so marked that any attempt to reconcile them would be futile, and a review of them would take more space than probable results would warrant. It is and has been since the organization of our state, assumed that judgments of courts import absolute verity and, as a broad proposition, that a judgment of a court of general jurisdiction, having jurisdiction of the cause and the parties, cannot be *268 im.peach.ed collaterally. In the great majority of the cases where the question has arisen the interests involved have been those acquired under the judgments sought to be attacked, as titles to real estate, or the like, where the effect of allowing the judgment to be overthrown would be to destroy the title of innocent persons who have invested their means in reliance on the judgment. The case at bar is one where the opposite is true; and no ease like it is found reported in the books.
The general rule, however, has not been without exceptions. While it is true that the parties must resort for relief from the judgment, to a direct attack, as by appeal, motion to correct, or proceeding in error, yet strangers to the judgment, not being- entitled to impeach it directly, and who if the judgment were given full faith and effect, would be prejudiced in some pre-existing right, are placed upon a different footing. It is said by Professor Freeman, in his work on Judgments, section 335, that “being neither parties to the action, nor entitled to manage the cause nor appeal from the judgment, they are allowed to impeach it whenever it is attempted to be enforced ag'ainst them.” It is observed by Professor Greenleaf, in his work on Evidence, section 522, that: “Justice requires that every cause be once fairly and impartially tried; but the public tranquility demands that, having been once tried, all litigation of that question, and between those parties, should be closed forever. It is also a most obvious principle of justice, that no man ought to be bound by proceedings to which he was a stranger.” In note to Hargrave’s Law Tracts, 456, it is said : “Fraud was a matter of fact, and if used in obtaining judgment, was a deceit on the court and hurtful to *269 strangers, who, as they could not come in to reverse or set aside the judgment, must of necessity be admitted to aver it was fraudulent.” And by Sutherland, J. in Griswold v. Stewart, 4 Cowan, at page 458: “The rule that records can not be impeached in pleading, is founded on the consideration that the regular and orderly way of trying their validity is by writ of error; and that it might lead to great abuse, to permit the solemn judgment of. a court of record to be incidentally called in question in pleading, when a more direct and satisfactory mode of testing their validity exists. The reason of the rule shows its limitation. It is confined to parties or privies, who alone can bring error. It does not apply to strangers.” In Vose v. Morton, 4 Cush., 27, Shaw, C. J. says: “The demandant claims title under an attachment followed by a valid judgment in the circuit court of the United States, an execution on that judgment, and a levy of the execution on the premises, as the property of Moses Morton, 2d, the judgment debtor. If this title is well established, it must prevail, although the tenant had a valid deed of prior date which was good against everybody but creditors, and purchasers without notice. B,ut the demandant must make out his case strictly ; he must prove that he was a creditor of Moses Morton, 2d; that he attached the premises prior to the registration of the tenant’s deed; and that such attachment was followed by a good judgment, execution and levy. The first point relied upon by the demandant is, that the judgment of the circuit court is conclusive, and that the tenant cannot aver against it. But we are of opinion that this position cannot be maintained. A judgment is conclusive only against parties and privies. The *270 tenant is in no sense a party or privy to that judgment. He is, indeed, privy in estate with Moses Morton, 2d, under whom he claims the demanded premises; but no question respecting the title to such estate was embraced or determined in that suit. It was only after that judgment was rendered, that by a distinct and collateral act, the judgment creditor attempted to satisfy his execution upon it, by a levy on the premises claimed by the tenant. * * * Being neither a party nor privy to the judgment, he cannot have a writ of error to reverse it, although it may be erroneous and void ; but, when such judgment is set up collaterally to defeat the tenant’s title, which is otherwise good, and the tenant can show that the judgment is erroneous, either in matter of law or fact, he may do so by proof. It is a general and established rule of law, that when a party’s right may be collaterally affected by a judgment, which for any carise is erroneous and void, but which he cannot bring a writ of error to reverse, he may, without reversing, prove it so erroneous and void,, in an}^ suit, in which its validity is drawn in ques-tion. The cases are numerous, and a few only will be cited, including the first and the last, which have been decided in Massachusetts. Alexander v. Gould, 1 Mass., 165; Smith v. Saxton, 6 Pick., 483 ; Pond v. Makepeace, 2 Met., 114 ; Leonard v. Bryant, 11 Met., 370. In Leonard v. Bryant, 11 Met., 370, the demandant’s title was derived from Chester Denison and George G. Denison; and the tenants set up a judgment in their favor against George G. Denison and one McGinney, recovered before the deed from George G. to the demandant was recorded. To this judgment the tenants objected because the same was rendered contrary *271 to the provisions of the statute. This objection was overruled, on the ground that the judgment was only voidable by a writ of error and that the demandant might maintain a writ of error, as a privy in estate, or because the judgment, was prejudicial to him by intercepting his title. The court was unanimously of the opinion after a careful examination of the authorities that the ruling below could not be sustained, and Held, In a writ of entry brought by L. against B, to recover possession of the land, that the said judgment was contrary to law and erroneous; but that there was no such privity of estate between L. and D. and E. as would authorize L. to maintain a writ of error to reverse the judgment, and therefore he might avoid it by plea and proof. ”
It has appeared by the authorities cited that two principal grounds on which collateral attack by strangers has been permitted are fraud and want of jurisdiction.
In the case at bar one risk which the purchaser took in buying when he did, although unknown to him, was that during the term a valid judgment might be taken against his grantor. He incurred no other peril by reason of the pending action ; and it is difficult to see that he is in any worse plight than he would have been had he examined the records of the court the day after the final adjournment of the January term, and found that no judgment had been taken against his grantor, provided the alleged facts can now be inquired into. As the record stood then his deed conveyed to him a title clear of any lien. What, then, was the character of the act which sought to impose a burden on his land? It was without the purchaser’s knowledge; it was presumably without *272 the knowledge of the judg'e. Its effect, if sustained, will be to make that appear to be true which in fact is not true; to make the records of the court, in other words, speak an untruth. It is, as to this purchaser, the obtaining of a pecuniary advantage by unfair means. That actual fraud is not alleged nor shown to have been intended is not conclusive. The facts are pleaded. The act itself was intended. Its effect, as we believe, if carried out, would work a constructive fraud. The precise case has, perhaps, not been adjudicated, but analogous i questions have arisen in the courts of sister states. In Downs v. Fuller, 2 Met., 135, it is held that: “When a judgment, recovered contrary to law, is prejudicial to a third party, he may avoid it by plea and proof.” And in the opinion it is observed by Wild,'J.: “Although the judgment in favor of the plaintiff in the present case, was not recovered by collusion with his debtor, or with any fraudulent intention, yet we think the defendant has a right to avoid it in the same manner, because he is neither party or privy to the plaintiff’s judgment, and is not entitled by the rules of law to reverse it by a writ of error. This was so decided in Warter v. Perry, Cro. Eliz., 199, and in Randal’s case, 2 Mod., 308; and the same principle is laid down in Com. Dig. Error, D; and in 5 Dane Ab. 225. This rule of law does not appear, in any case to have been controverted, and it seems reasonable and just, that where a judgment is recovered contrary to law, and prejudicial to a third party, he should have a right to avoid it.” Hunter, Assignee, v. Cl'd Stove Co., 31 Minn., 505, is in point as involving the precise principle. The syllabus is: “The plaintiff, as statutory assignee of certain land for the benefit of creditors, brings *273 this action to determine an adverse claim to the same made by the defendant. The adverse claim as set up in defendant’s answer, is based upon the alleged lien of a judgment confessed by plaintiff’s assignor, and appearing upon the records of the district court to have been indorsed upon the ‘statement’ for confession, and docketed before the assignment to plaintiff, while in fact, and as the reply alleges, the judgment was not so indorsed nor entered in the judgment book until more than six months after the making’ and filing of the assignment. Meld, that in this action the false record may properly be attacked, and plaintiff’s title as assignee adjudged paramount to the lien appearing to be thereby created.”
The opinion, by Berry, J., so well expresses our view that we take space to quote from it at length: “In the case at bar the plaintiff is a stranger to the alleged judgment — just as much so as would be one of the creditors whom he represents — and hence he is not estopped or in any way bound by it. 1 Greenl. Ev., section 532. Under the statute, as assignee, he takes and holds the assigned property, in trust for the benefit of creditors of the assignor. Hence it is his plain duty to protect and defend it, and, so far as lies in his power, to make it available to the payment, of the creditors claims. If after he has taken the lands under the assignment, the records of á court are so manipulated as to show a judgment lien upon the assigned property at the time of the assignment, and such records are false, there being no such judgment lien at that time, it is the assignee’s duty to protect the property by removing the cloud which the false records raise. He cannot move in the action or quasi action in *274 which the alleged judgment lien was obtained, for he is not a party to it; neither has he succeeded to the rights or liabilities of any party to it. As respects the judgment, there is no privity between him and either party to it. Mann v. Flower, 26 Minn., 479; and see Bennett v. Whitcomb, 25 Minn., 148; Vose v. Morton, 4 Cush. 27; Freeman on Judgments, section 162. Nevertheless, there must be some way in which he can have it adjudicated that his title to the land is paramount to the lien of the defendant’s judgment, notwithstanding the appearance of the record to the contrary, for otherwise his case would be the inadmissible one of a clear legal right without a remedy. He must therefore be able to attack the false record in some way. * * * His concern is that his title be adjudged paramount to the lien apparently created by the false record. We see no reason why this may not be done in the present action.* * * It is an action to determine defendant’s adverse claim. The answer sets up the judgment, and the reply the facts which go to show that the record is false. An issue as to the validity of the apparent lien, is thus distinctly raised in the pleadings. The facts set up in the answer, and found by the court, also show that, as respects the plaintiff, the record is not only false, but in law fraudulently false, though, as the court finds, there may have been no moral fraud. That fraud vitiates everything is a rule without exception, and which applies to a judgment as well as to an ordinary contract. Steph. Ev., art. 46. Why may it not also apply to the false and fraudulent record of a judgment? And why,' in an action like the present, may not a party injured by such record have it adjudged to be false and fraudulent as respects him, and thereby secure just and ap *275 propriate relief, without disturbing a record with which he has no further concern, save as it clouds his title? We see no good reason to the contrary. It is true that the record of a judgment is stated by high authority to be conclusive evidence of the fact of the rendition of the judgment, and of all the legal consequences resulting from that fact, whoever may be the parties to the suit in which it is offered in evidence. 1 Greeni. Ev., section 538. But, in our opinion, this statement is too broad when sought to be applied to an attack upon the record by a stranger, upon the ground that it is as to him false and fraudulent. Such an attack may, in a ease like this at bar, be made in a collateral action. See McIndoe v. Hazelton, 39 Wis., 567, and Edson v. Cumings, 17 N. W. Rep., 693, and cases cited.”
As to jurisdiction, the court of common pleas acquired jurisdiction of the parties and of the subject matter. It pronounced a judgment during the term, but did not then enter it. One requisite of a judgment is that it must be given at the right time. As said by Bouvier, Law Die., vol. 2, page 15: “To be valid, a judicial judgment must be given by competent judge or court, at a time and place appointed by law, and in the form it requires. A judgment would be null if the judge had not jurisdiction of the matter, or having such jurisdiction, he exercised it when there was no court held. ’ ’ Under our practice the court retains control of its journals during the term; it may then add to, strike out or alter that which is on the journals, or incorporate new matter. On the final adjournment, however, that control is lost. This we take to be elementary. Confessedly the judge cannot, in vacation after the term, render a judgment. How *276 can he make an order affecting a judgment which he had in fact pronounced in term? An order necessary to complete the judg’inent and make it effective? While it cannot be said that jurisdiction of the case had been lost, nevertheless an attempt to exercise jurisdiction at the time this entry is alleged to have been made, would, according to the authorities, have been as futile, at least as regards the rights of persons not parties nor privies, as though jurisdiction had in fact been lost because there was no court then to exercise it. That the court at a subsequent term has power to then order the entry of a judgment actually pronounced during a preceding term, is well understood, but that does not cover the case. We have found that such an order will not avail as against the intervening rights of an innocent purchaser. But even such an order cannot be made by the judge in vacation; it can be made only by a court in session, and the court, between terms, is not in session. How, then, can the counsel and the clerk, by an entry made after the term is over, give to such entry the effect of a judgment of a court, as against strangers, at a time when the judge himself would be powerless to act? We think they cannot. If there was power in the clerk and counsel to cure the omission four days after the term, then they might do it forty days after, or four hundred. We have not overlooked the practice of making entries on the journal after the term. It is common and is acquiesced in by counsel and parties. One reason for such acquiescence is that where judgment has in fact been pronounced, it would be within the power of the court at a subsequent term, to order the entry made, and so no substantial advantage would result from objection; and *277 there are other considerations of convenience involved. But it does not follow that because the practice is acquiesced in by litigants and their counsel that it must be held to conclude strangers.
Our conclusions are that section 5375 requires that in order to create a lien as of the first day of the term, there must be an entry of judgment on the journal during the term; that the entry made in this case after the term was unauthorized and worked a fraud upon the plaintiff in error; that the judgment, as it appears of record, does not conclude his rights, and that, not being a privy as respects the action then pending, he could not maintain a direct action to review the judgment, and, therefore, has the right to challenge its effect on his property in the case at bar.
The judgments below will be reversed and the cause remanded with direction to overrule the demurrer to the answer, and for further proceedings according to law.

Beversed.